JANUARY TERM, 1852.    251

Parker v. Doe ex dem. Burgen and Pearsall.

## PARKER *vs.* DOE *ex dem.* BURGEN & PEARSALL.

1. When a nonsuit is taken which is afterwards, on a subsequent day of the term, set aside "on the payment of all the costs of suit," and the costs are not paid until after the adjournment of court, the cause cannot be stricken from the docket on motion.

2. A sale for taxes due the city, made by the corporate authorities of the city of Montgomery, under the power conferred upon them by the act of incorporation, (see City Laws, 30,) has the force and effect of a sale under judgment and execution from the Circuit Court; a party, therefore, claiming under such a sale must show that the requisitions of the statutes, as to the assessment of taxes and the subsequent proceedings relative thereto, were complied with.

3. Parol evidence cannot be received to show that a meeting of the Mayor and Aldermen, or board of assessors, was held, as required by the statute, (City Laws, 30,) for the purpose of correcting and sanctioning the assessment.

4. When the record of the proceedings of the corporate authorities does not show that such a meeting was held, the mere advertisement of the Mayor calling the meeting does not warrant the presumption that it was held.

5. Nor can the fact that the meeting was held be inferred from the fact that a sale of certain taxable property, assessed to persons unknown, was ordered by the City Council.

ERROR to the Circuit Court of Montgomery.

Tried before the Hon. John D. Phelan.

When this case was reached on the call of the docket, the plaintiff in error, who was the defendant below, moved the court to strike the cause from the docket, on the ground that it had been previously disposed of; and to sustain the motion, proved that at the last term of the court the plaintiff had taken a nonsuit, which was entered on the minutes of the court, and that on a subsequent day of the term the nonsuit was set aside, on the plaintiff's application, "on the payment of all the costs of suit;" he then proved by the clerk that the costs were not paid until sometime in vacation after the adjournment of the court. On this state of facts, the court decided that the case was still pending in court, and overruled the motion to strike it from the docket; to which defendant excepted.

This was an action of ejectment brought by the defendants in error, against the plaintiff, in the Circuit Court of Montgomery, to recover part of lot number seven, in the City of

Montgomery. The plaintiffs below proved that the patent to said lot was granted to John Falconer, and then showed a regular chain of conveyances from Falconer to themselves. The defendant below claimed title under a sale for taxes due the City Council of Montgomery for the year 1840.

The plaintiff in error introduced the Clerk of the City Council of Montgomery, who testified that the Council kept minutes of some of its proceedings, and produced a book which he proved contained the minutes of the Council, from which defendant read the following orders and resolutions: "City Council in session, 30th April, 1840. The following resolution was offered by Ald. Blue, and adopted, to-wit: Resolved, That the following persons be and they are hereby appointed assessors of the value of real estate in the City of Montgomery for the municipal year 1840 : For ward No. 1, Samuel Parsons ; No. 2, Lewis Owen; No. 3, John Murphy."

"City Council of Montgomery, in session August the 5th, 1840· The following resolution offered by T. Tarleton and unanimously adopted, to-wit: Resolved that a tax of one-half of one per cent. upon the value of all real estate, within the corporate limits of the City of Montgomery, be and is hereby declared to be the rate of tax for the municipal year 1840."

It was shown that this tax was assessed and returned, according to the requisitions of the charter of incorporation, that the lot in question was assessed at $150 value, and set down to an owner unknown. An advertisement of the Mayor was then introduced, and proved to have been duly published, in which the owners of real estate in the City of Montgomery were notified, that the City Council would meet on the 18th of August, 1840, at the Mayor's office, "to hear and determine upon all complaints which may be made against said assessment, and to correct errors, and supply omissions."

Thorington, who was Mayor of the City of Montgomery for the year 1840, was then introduced as a witness by the defendant in the court below, and testified, that his recollection was not very distinct, but had been refreshed by hearing the notice read to the jury, and he had some recollection that a meeting was held at the time and place mentioned in the notice, for the purposes mentioned in the notice, and that he had no doubt that said meeting was held. The plaintiff

JANUARY TERM, 1852.    253

Parker v. Doe ex dem. Burgen and Pearsall.

objected to this proof, and it was ruled out by the court in its charge to the jury.

Neither the minutes of the Council, nor the records of the City, show that the meeting spoken of by the witness had ever been held.

The defendant below then read from the minutes of the City Council a resolution requiring the sale of lots, the owners of which were unknown, and which had been assessed for the year 1840, for the payment of taxes, on the first Monday in June, 1841. The meeting at which this resolution was adopted was held on the 27th February, 1841. At a meeting on the 22d March, 1841, this sale was ordered to be postponed until the first Monday in July of that year.

An advertisement for the sale of such lots, which included the one in controversy, was shown to have been regularly made, and in pursuance thereof this lot was sold, and was purchased by the plaintiff in error, he being the highest and best bidder for the same. It was further shown that he complied with the terms of the sale, and received the tax collector's deed for the premises, which he produced and proved before the jury.

Upon this proof the defendant moved the court to instruct the jury, "that if they believed from the evidence that there was a meeting of the City Council of Montgomery, at the time specified in the notice which had been read to them from the newspaper, for the purpose of correcting errors, and supplying omissions, and passing on the assessment, and rectifying all errors, that then the defendant was entitled to recover," which charge the court refused to give; but charged the jury, that if such a meeting of the City Council was held for that purpose, and did pass upon said assessment, and rectify errors, and supply omissions, that if the minutes of the City Council did not show the facts, then they must find for the plaintiff.

To the refusal to charge as requested, and to the charge given, the defendant excepted.

The defendant then requested the court to charge the jury, that if they believed from the evidence that the City Council ordered a sale of the property assessed to persons unknown, that then they may presume from that fact that the City Council did correct errors, and supply omissions, and pass on

254 ALABAMA.

Parker v. Doe ex dem. Burgen and Pearsall.

the said assessment; which charge the court refused, and the defendant excepted.

The court instructed the jury that they could not regard the testimony of the witness Thorington, as in the opinion of the court the facts sought to be proved by him could only be shown by the minutes of the City Council, and not by parol evidence. To which the defendant also excepted.

The overruling the motion to strike from the docket, the instructions given, and those refused by the court, are here assigned for error.

HARRIS, for plaintiff in error.

I. The first charge given by the court below, as shown in the bill of exceptions, was an affirmative charge, and made the title of the defendant in the court below to depend entirely upon the fact that there was written evidence of the fact of the meeting of the City Council for the correction of errors, &c., in the assessment of taxes. In was, in effect, an instruction to the jury that, although the defendant in the court below had proven every other fact essential to the validity of his title except written evidence of the meeting to correct errors, yet if there was no written evidence of the meeting to correct errors, &c., they must find for the plaintiff in the court below. The charge made the title of the defendant in the court below to depend upon a fact which was not essential to its validity, and was therefore erroneous. Nabors v. Camp, 14 Ala. Rep. 460; Carlisle v. Hill, 16 Ala. Rep. 398.

II. Neither the objection to the admissibility of the evidence of Col. Thorington, nor the charge of the court predicated upon it, made the admissibility and validity of the testimony to depend upon the fact that the proper preliminary proof to authorize its admission had not been made. This court must therefore presume that it was shown that the minutes of the City Council failed to show that the meeting testified to by him was held. Tharp v. The State, 15 Ala. Rep. 749; Ware and Cowles v. Dudley, 16 Ala. Rep. 745.

III. The charge of the court makes the validity of the title of the defendant in error to depend entirely upon the fact that there was written evidence of the meeting to correct er-

JANUARY TERM, 1852. 255

Parker v. Doe ex dem. Burgen and Pearsall.

rors, &c.; and there is nothing, either in the common or statute law, that makes the validity of the proceedings of a corporation to depend upon the existence of written memorials of evidence of the act. Angell & Ames on Corporations, 233; Bank of U. S. v. Dandridge, 12 Wheaton's Rep. 64; Bassett v. Marshall, 9 Mass. Rep. 312.

IV. The same presumptions may be drawn from the acts of corporations that may be drawn from the acts of private persons. Middlesex Husbandmen v. Davis, 3 Metcalf, 137; 12 Wheaton, 64; 3 Pickering, 336–340; Montgomery R. R. Co. v. Hurst, 9 Ala. Rep. 513; Bates v. State Bank. 2 Ala. Rep. 451.

MARTIN & BALDWIN, contra.

The court did not err in refusing to strike the case from the docket. Ex parte John Lowe, present term.

The charter of the City of Montgomery authorizes it to pass such ordinances and by-laws, not contrary to the Constitution and laws of the State and the United States, as the Mayor and Aldermen shall from time to time deem necessary and proper to carry into effect the true intent and meaning of the act, and the same to enforce, alter and repeal. City Laws, 26, § 5. An assessment of taxes by the City Council can be made only by an ordinance. Ib. 26, 30. An ordinance is a law, a statute, a decree. 2 Bouvier's Law Dictionary, 225; and in this case, if not by express enactment, must by implication of law be in writing. Angel & Ames on Corp. 164; Black's Com. 475.

An assessment, to have the force and effect of a judgment and execution, to authorize the sale of lands, and the seizure of the body of any citizen of the State, or United States, must be in writing; on the universally acknowledged principle that the title of real estate will not pass, except some memorandum of the transfer shall be in writing, signed by the party to be charged, or by some other person by him thereunto authorized. An act of this character would be inconsistent with the laws of this State, and expressly prohibited by the charter incorporating the City of Montgomery. City Laws, 26; Black. Com. 475.

The mode of action prescribed by the charter of an incor-

256       *         ALABAMA.

Parker v. Doe ex dem. Burgen and Pearsall.

poration must be rigidly pursued. 1 Cranch, 166; Angel & Ames on Corp. 167. Corporations cannot make a parol contract. 1 Black. Com. 475; Angel & Ames, 164. The proper mode of proof of the appointment of an agency, is by the production of the record or books of the corporation. Angel & Ames, 219–220. And with much greater force may it be insisted, the acts of the Mayor and Aldermen, affecting the title of real estate, shall be proved in like manner. Of the transaction of a board of directors or Councilmen, there ought to be some written memorial, as the body consists of several persons, and there is no other method of authenticating the common mind. 1 Dev. & Bat. 306.

The appointment of directors of a corporation cannot be proved by reputation. They should be proved by the minutes of the corporation. 7 Cowen, 234. If secondary evidence can be resorted to under any circumstances to prove the action of the Board of Mayor and Aldermen, the existance of the record must be proved and its absence accounted for to make the secondary evidence admissible. 12 Wheat. 115.

LIGON, J.—The motion to strike the case from docket in the court below was rightly disallowed. *Ex parte* Lowe, at the present term.

It will be impossible to consider the first and third exceptions separately, as they are most intimately connected; and if the action of the court below was correct on the matter involved in the third, then the ruling on the point presented by the first would follow as a consequence. It is manifest, also, that, at the trial, the charge brought to our notice by the third exception must have been prior, in point of time, to the others that were given or refused.

It seems, that after the witness (Thorington) had been permitted to testify, against the objection of the plaintiffs, the court, in its original charge to the jury, instructed them to disregard this proof, as the facts deposed to by him could only be shown by the minutes of the City Council. These facts were, that a meeting of the council was held, to pass on the assessment of the year 1840, to correct errors and hear complaints.

By the twelfth section of the act of 1837, entitled, "An act to incorporate the city of Montgomery," it is provided: "That the said City Council shall cause an assessment of taxes to be made in each and every year by some proper and fit person or persons; the assessment naming the person liable to such taxes when known, and specifying the property when the owner is not known, which assessment shall be returned to the Mayor, to be laid before the Mayor and Aldermen; and the Mayor shall cause at least ten days public notice to be given that assessment has been made, and of the time when the Mayor and Aldermen will proceed to hear and determine upon all complaints which may be made against such assessment, and it shall be their duty to correct errors, and supply omissions; and when the same has been passed upon by the said City Council, the said assessment shall have the force and effect of a judgment and execution, and may be collected by levy and sale of property, on giving such notice as is required by law, on executions from the Circuit Court," &c. (Code of Laws of City of Montgomery, 30.)

By the eighth section of the act of 1828, entitled, "An act to amend an act to incorporate the Town of Montgomery," and which is still in force since the style of the corporation is changed to "the City of Montgomery," it is provided, "that the said Intendant and Councillors shall appoint a Clerk, whose duty it shall be to keep a fair record of the proceedings," &c.

It was evidently the intention of the Legislature to require the City Council to keep a record of all its proceedings, and it provides an officer, whose duty it shall be to make out and keep the records thus required. The language defining the duties of the Clerk of the Council is as strong in its import, as that employed in relation to clerks of courts.

The importance, indeed the absolute necessity of recording the proceedings of all meetings of the council, held in pursuance of the twelfth section of the act of 1837, will readily be seen, when we advert to the object of such meetings, and the legal effect of their proceedings. No assessment of taxes can be perfect or complete until it has been passed upon by such a meeting; and its acts, when the assessment is corrected and adjusted by them, are clothed with the authority of

judgment and execution. Upon these, the tax collector can proceed to sell the real estate within the city limits, when the taxes remain unpaid, and to this record the plaintiff in error must resort to make out his title, for it is well settled, that when one claims title under execution sale, he is bound to show a judgment, or his title fails.

By the charter of the city of Montgomery, section twelve, *supra*, it is further provided, "that all sales made under, or by virtue of such assessment, shall convey to the purchaser the same title as if sold by execution from the Circuit Court; and the collector of said city shall, in case of sale of real estate, give the purchaser a deed of conveyance, which shall vest in the purchaser the same interest that the person had against whom such tax was assessed at the time of such assessment, and where the owner is not known, the entire equitable and legal interest in such real estate, discharged from all liens." It is also provided in the last clause of the same section, "that the duties required of the said Mayor and Aldermen, except giving notice and issuing *capias ad satisfaciendum*, may be devolved upon a board of assessors, and the assessments approved by them shall have the same force and effect as if approved by the Mayor and Aldermen." By express provision of this section, the sale under the assessment approved and sanctioned by the Mayor and Aldermen, or by the board of assessors appointed by them, is to convey to the purchaser such title, as sales under writs of execution from the Circuit Court would vest in purchasers under them. When real estate is thus sold under execution, unless a judgment can be shown which will support the execution, the purchaser takes no title, for he purchases under a void process. The same rule must apply here, and that which the act of incorporation substitutes for the judgment of the Circuit Court, that is, the proceedings of the Mayor and Aldermen, or their substitutes, a board of assessors, correcting and sanctioning·the assessment, must be shown to justify the sale by the tax collector, and support the title of the purchaser.

By what testimony can the existence of this judgment, or its equivalent be shown? In the case of a judgment, the answer is plain: by the record of the court in which it is obtained, and by that alone. And one reason for this is to be

found in the fact, that with us real estate cannot be sold by process from any court which is not a court of record. It is highly improbable to suppose that the Legislature could have intended to enable a corporation to do that without a record, which it denied to the inferior tribunals of the State, which are not required to keep a record of their proceedings; and especially is it so, when we see that by the charter of this corporation it has provided an officer, and made it his duty to keep a fair record of its proceedings. For this reason, we think, the Court might well have refused to let the testimony of Thorington go to the jury, when it was objected to by the plaintiffs, and that it did not err, when it instructed the jury to disregard it.

The views here expressed do not at all conflict with the ruling of the Supreme Court of the United States, in the case of the Bank of the United States v. Dandridge, (12 Wheat. 64) which was relied on by the plaintiff in error. The decision in that case was influenced by the consideration, that, the charter of the bank did not require it to keep a record of the acceptance and approval of the bonds of its officers; and as there was no such requisition in the charter, and the bond of Dandridge, as cashier, was filed among its papers, and he had acted in that capacity in the Branch at Richmond for a number of years, the court said, the acceptance and approval of the bond would be presumed. In this case, however, we have seen, the charter requires a record to be kept of the proceedings of the corporate authorities, and no presumption in favor of the acts of its officers in this respect can be indulged, in the absence of such record.

This testimony being excluded from the jury, there remained no evidence whatever that the meeting of the council required by the charter was ever held, to act on the assessment of 1840; and consequently, the first charge asked for by the plaintiff in error was abstract, and had it been given, could have had no other effect than to mislead the jury; the court, therefore, very properly refused it. The records of the proceedings of the council, which were produced and identified by the clerk, did not disclose that any such meeting had taken place; and the advertisement of the Mayor calling such a meeting, in the absence of any record evidence of its having

convened, would not justify the presumption that it had been held, and that its acts were such as to perfect the assessment, and give to it the force and effect of a judgment and execution against those whose property had been assessed. The charge given by the court, that the proceedings of the council could only be proved by the record of their acts, made according to the requirements of the charter, was a fair exposition of the law, and, in our opinion, free from all error.

The second charge asked was correctly refused, for it cannot be tolerated that an act void and improper in itself, unless supported by another and a previous one, should be allowed to go to the jury for the purpose of creating a presumption that the former had been done. This would be inverting the rule of evidence in purchases under execution sales, and allowing the writ of execution to prove the judgment on which it purports to have issued; instead of producing the judgment to sustain the execution and sale.

There is no error in the record, and the judgment must be affirmed.